UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JESSICA MOORE,**
                    **Plaintiff,**

**-vs-**                                              **Case No. 6:09-cv-274-Orl-31KRS**

**THE CLUB AT ORLANDO**
**CONDOMINIUM ASSOCIATION, INC.,**
**PEGGY CULLEN,**
                    **Defendants.**
_____

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 62) filed by the Defendants, The Club at Orlando Condominium Association, Inc. ("The Association") and Peggy Cullen ("Cullen"), as well as the response (Doc. 90) filed by the Plaintiff, Jessica Moore ("Moore").

**I.    Background**

In April 2008, Moore, who is African American, contacted All American Property Management ("All American") to inquire about leasing a condominium she had seen on the company's website. The condominium was located in a development called the Club at Orlando (the "Club"). Moore made an appointment to see the condominium with Clara Gregory ("Gregory"), a leasing agent for All American. Gregory showed Moore the unit for approximately 15 minutes. Afterward, according to Gregory, Moore filled out an application and asked Gregory to accompany her to her bank so she could pay the $50 application fee.

Before they did so, Cullen entered the unit and, according to Moore, introduced herself as the "condo leasing manager". (Cullen's actual title with the Association was "community association manager.") Cullen told Moore that the unit had been rented. Gregory disagreed, telling Moore that so far as she knew the unit was still available, and that she was the only person authorized by the condo's owner to show the unit.

Cullen asked Moore where she worked and whether she had children. She also informed Moore that, even if she received approval as a prospective tenant from All American, she would also have to be approved by the Association. Cullen also told Moore that the Association had strict rules, including a rule against having loud parties and a rule that the rent had to be paid in a timely fashion. And she told Moore that she could not have multiple boyfriends spending the night. Cullen shook Gregory's hand, but not Moore's – despite Moore's offer to do so – and then left. Moore told Gregory that she was in a hurry to get back to her job and would take the check to the office the next day, and therefore Gregory did not need to accompany her to the bank.

However, Moore never turned in the application. That afternoon, she sent an email to All American, complaining about Cullen's conduct, which she described, among other things as "unprofessional" and "very racially motivated". In the email, she notified All American that, because of the way she felt Cullen had treated her, she no longer wished to be considered for the unit. She subsequently rented a different unit through All American.

Moore filed the instant suit on January 14, 2009, and it was removed to this Court on February 11, 2009. Her amended complaint (Doc. 23) contains three counts. Count I asserts a

violation of the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq*, (the "FHA").[1] Count II asserts a claim under 42 U.S.C. § 1981, while Count III asserts a claim under Section 1982. The Defendants seek summary judgment as to all three counts.

**B.    Legal Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

---

[1] Moore's first count actually asserts claims under both the federal FHA and Florida's FHA. However, the statutes are substantively identical. *Loren v. Sasser*, 309 F.3d 1296, 1300 n.9 (11th Cir. 2002). Thus, this opinion will address only the federal FHA.

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### III.   Analysis

#### A.   FHA

The Defendants contend that they are not subject to the FHA, because they do not own or lease any of the condominiums and therefore could not affect the availability of housing. It is not clear that the FHA actually includes such a requirement. The case cited by the Defendants for this proposition actually addresses the requirements for a party to be found to have engaged in "steering," rather than the requirements for being subject to the FHA. However, assuming *arguendo* that the requirement exists, the Defendants meet it. They admit that the Association's by-laws give it the authority to reject potential lessees. Further, they admit that the Association requires criminal background checks on potential lessees before it will grant approval. As such, the Association was certainly in a position to affect the availability of housing.

The Fair Housing Act makes it illegal "[t]o represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d). The Defendants contend that Moore has not established a violation of the FHA occurred because (1) Moore received truthful information about the availability of the condo from Gregory, and (2) that

Moore has failed to show that her race or color played any role in Cullen's falsely telling her that the unit had already been rented.

But a subsequent correction by a third party is not enough to undo a misrepresentation such as the one alleged in the instant case. As for the Defendant's second point, Moore has no direct evidence that racial animus played a role in Cullen's actions. However, Moore has established that Cullen was aware of her race at the time she told her the unit was unavailable. And if the jury were to credit Moore's testimony (which was partially corroborated by Gregory) regarding the other topics Cullen raised during their brief encounter – such as the requirements that Moore pay her rent on time, not have loud parties, and not have lots of boyfriends staying over – it could reasonably conclude that Cullen's actions were rooted in negative racial stereotypes, and that her initial statement that the unit was unavailable had the same roots.

### B.     Section 1981

Section 1981 states, in pertinent part, that all persons "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To establish a claim under Section 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in the statute. *Kinnon v. Arcoub, Gopman & Assocs.*, 490 F.3d 886, 891 (11th Cir. 2007). As to this claim, the Defendants take issue only with the second element, arguing that Moore has failed to present any evidence of intentional discrimination. However, as addressed above, a reasonable jury could conclude that racial stereotypes fueled Cullen's conversation with Moore, and that she intended to discriminate against her by denying her an opportunity to rent the condominium.

### C.     Section 1982

Section 1982 is similar to Section 1981, except that it focuses on property rights rather than rights to make and enforce contracts. *CBOCS W., Inc. v. Humphries*, 128 S.Ct. 1951, 1955 (2008). The Defendants contend, and the Plaintiff concedes, that to establish her Section 1982 claim, Moore must show that she applied for and was qualified to rent the property at issue. The Defendants contend that Moore cannot meet either of these requirements because she never turned in her application, and she has presented no evidence that she was qualified to rent the unit.

Moore contends that the futile gesture doctrine precludes her from having to apply for the unit in order to pursue her Section 1982 claim. In the employment context, the futile gesture doctrine allows a plaintiff who never applied for a position to establish an employment discrimination claim by showing that she refrained from applying due to a justifiable belief that the employer's discriminatory practices made filing an application a futile gesture. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002). Assuming *arguendo* that this doctrine is also applicable in Section 1982 cases, it is of no assistance to Moore. Moore has presented no evidence that she refrained from turning in her application because she believed it would be rejected. Instead, the evidence – such as her deposition testimony and her email to All American – tends to show that she was not willing to rent a unit at the Club because of her anger at the way she had been treated by Cullen. Judgment will be entered in favor of the Defendants as to Count III.

### D.     Punitive Damages

The Defendants also object to Moore's attempt to recover punitive damages pursuant to the FHA. Punitive damages are available under the FHA when a defendant's conduct is "motivated by evil motive or intent" or shows a "reckless or callous disregard of, or indifference" to a plaintiff's

rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Badami v. Flood*, 214 F.3d 994, 997 (8th Cir. 2000). There is at least some evidence that Cullen was aware of the FHA and the acts that it prohibited. Therefore, summary judgment is not appropriate as to Plaintiff's punitive damages claim.

**IV.  Conclusion**

In consideration of the foregoing, it is hereby **ORDERED** that the Motion for Summary Judgment (Doc. 62) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment will be granted in favor of the Defendants as to Count III. In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 19, 2009.

                                                                                                GREGORY A. PRESNELL
                                                                                                UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party